UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY,<br><br>*Plaintiffs*,<br><br>v.<br><br>DUDE PRODUCTS, INC., BENJAMIN KARTER, DIEGO ORNELAS,<br><br>*Defendants*. | Case No. 1:25-cv-9918 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners") (collectively, "Insurers"), through their undersigned counsel, bring this Complaint for Declaratory Judgment against Dude Products, Inc. ("Dude Products"), Benjamin Karter, and Diego Ornelas. In support, Insurers allege as follows:

**NATURE OF THE CASE**

1. This is a Declaratory Judgment action to determine the rights and obligations under certain commercial liability and umbrella policies, arising from the putative class action lawsuit against Dude Products in the United States District Court for the Southern District of California, captioned *Benjamin Karter and Diego Ornelas, Individually and On Behalf of All Others Similarly Situated v. Dude Products, Inc.*, Case No. 25-cv-663 ("Underlying Lawsuit").

2. Specifically, Insurers seek a declaration that they have no obligation—under either policy—to defend or indemnify Dude Products in connection with the Underlying Lawsuit.

## THE PARTIES

3. Owners is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located in Lansing, Michigan. Therefore, Owners is a citizen of the States of Ohio and Michigan.

4. Auto-Owners is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located in Lansing, Michigan. Therefore, Auto-Owners is a citizen of the State of Michigan.

5. Dude Products is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Chicago, Illinois. Therefore, Dude Products is a citizen of the States of Delaware and Illinois. Dude Products is the named insured under the insurance policies at issue in this coverage action.

6. Benjamin Karter is domiciled in Orange County, California, and is therefore a citizen of the State of California. Insurers name Mr. Karter as a potentially-interested party because he is a named plaintiff and purported class representative in the Underlying Lawsuit. Insurers seek no affirmative relief against Mr. Karter.

7. Diego Ornelas is domiciled in San Diego County, California, and is therefore a citizen of the State of California. Insurers name Mr. Ornelas as a potentially-interested party because he is a named plaintiff and purported class representative in the Underlying Lawsuit. Insurers seek no affirmative relief against Mr. Ornelas.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this action because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in the Northern District of Illinois, including where Dude Products maintains its principle place of business and where the subject policies were issued.

10. Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, an actual justiciable controversy exists between Insurers and Dude Products, and therefore this Court has the authority to declare their respective rights and liabilities.

## FACTUAL BACKGROUND

**I. The Policies**

11. From April 21, 2015 to April 21, 2021, Dude Products maintained Tailored Protection Policy No. 154604-07130020-20 ("Primary Policy") and Commercial Umbrella Policy No. 50-328-285-01 ("Umbrella Policy") (collectively, "Policies"). True and accurate copies of the Policies for the most recent term are attached as Exhibits A and B, respectively.

12. In relevant part, the Policies provide coverage against (1) "Bodily Injury and Property Damage Liability," and (2) "Personal and Advertising Injury Liability." Exh. A, 117; Exh. B, 17–18, 30.

    **A. Bodily Injury and Property Damage Coverage**

13. Both Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," and "property damage" as:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exh. A, 140, 142–143; Exh. B, 13, 16.

    14.    Under the Primary Policy, the "bodily injury" or "property damage" must be "caused by an 'occurrence,'" while the Umbrella Policy requires that they be "caused by an incident." Exh. A, 130; Exh. B, 18.

    15.    For purposes of "property damage," "occurrence" and "incident" share the same meaning: "an accident," including "continuous or repeated exposure to substantially the same general harmful conditions." Exh. A, 142; Exh. B, 14. For purposes of "bodily injury," the Umbrella Policy separately defines "incident" as "an accident," including "damages claimed by any person or organization for care, loss of services or death resulting at anytime from the bodily injury." Exh. B, 14.

### B.    Personal and Advertising Injury Coverage

    16.    The Primary Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses":

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your "advertisement"; or

      g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*See* Exh. A, 142.

17. Under the Primary Policy, "advertisement" "means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." *Id.* at 140. And, "[f]or purposes of this definition":

      a.      Notices that are published include material placed on the Internet or on similar electronic means of communication; and

      b.      Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

*Id*.

18. The Umbrella Policy uses the same meaning of "advertisement" to define "advertising injury," specifically as "injury arising out of one or more of the following offenses":

      1.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your advertisement;

      2.      Oral or written publication, in any manner, of material that violates a person's right of privacy in your advertisement;

      3.      The use of another's advertising idea in your advertisement; or

      4.      Infringing upon another's copyright, trade dress or slogan in your advertisement.

Exh. B, 13.

19. Finally, the Umbrella Policy defines "personal injury" as "injury, other than bodily injury, arising out of one or more of the following offenses":

      1.      False arrest, detention or imprisonment;

      2.      Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication of material, in any manner, that violates a person's right to privacy; or

6. Discrimination or humiliation.

*Id.* at 15.

20. Both Policies exclude the following types of "personal and advertising injuries":

- <u>Knowing Violation of Rights of Another</u>: "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" For purposes of this Exclusion, the Umbrella Policy adds "or [e]xpected or intended by any insured."

- <u>Material Published With Knowledge Of Falsity</u>: "arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity."

- <u>Quality Or Performance Of Goods – Failure To Conform To Statements</u>: "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"

Exh. A, 134–36; Exh. B, 19–26.

## II. The Underlying Lawsuit

### A. Alleged Misrepresentations

21. On March 20, 2025, Benjamin Karter and Diego Ornelas (collectively, "Named Plaintiffs"), on behalf of themselves and a putative class ("Class"), filed the Underlying Lawsuit against Dude Products. A true and accurate copy of the Complaint in the Underlying Lawsuit is attached as Exhibit C.

22. The Complaint alleges that Dude Products, which is "one of the leading personal hygiene products companies in the United States," falsely represented that "all or nearly all [of its] products" (collectively, "Class Products") were "Assembled in USA." Exh. C, ¶¶ 5–6, 20.

23. This appeared on the products themselves (a prominent label with an American flag), Dude Products' website (which through at least October of 2024, advertised the Class Products as "USA-Made"), and third-party retailers (through "their websites' product images and descriptions"). *Id.* at ¶¶ 5–6, 20, 53.

24. According to the Complaint, those representations are "a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs." *Id.* at ¶ 62. That is, "American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts"—specifically because they are "subject to strict regulatory requirements," including "agricultural, environmental, labor, safety, ethical, and quality standards." *Id.* at ¶¶ 63, 82.

25. By contrast, "[f]oreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy." *Id.* at ¶ 83. Moreover, "foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin counterparts." *Id.* at ¶ 84.

26. While Dude Products "represented that the Class Products were of U.S. origin without qualification, the products are substantially made with ingredients and components sourced, grown, or manufactured outside the United States," such as "tea tree oil and shea butter." *Id.* at ¶¶ 7, 24, 59. Furthermore, the Class Products "are produced using packing that is not from the United States." *Id.* at ¶ 58.

27. Therefore, "the Class Products—including the ingredients and components used to produce these products—do not meet the sourcing standards that consumers would expect from products claiming to be of U.S. origin, without qualification." *Id.* at ¶ 110.

28. According to the Complaint, Dude Products "knew or should have known" that these representations were false, and that they "violated federal regulations and state laws." *Id.* at ¶¶ 113–14, 168 (Dude Products "committed these acts with full awareness of the harm it would cause and engaged in such unfair and deceptive conduct despite this knowledge"), ¶ 208 (Dude Products "acted intentionally by willfully and purposefully disseminating misrepresentations").

**B.     Named Plaintiffs and the Class**

29. On December 16, 2022, Mr. Karter sought to "purchase a product made in the United States with domestic ingredients and components—especially since it is a personal hygiene product." *Id.* at ¶ 69. Therefore, "[r]elying on the unqualified 'Assembled in USA' representation," Mr. Karter purchased (for $3.99) a Dude Products item from Amazon's website. *Id.*

30. On April 11, 2023, Mr. Karter purchased another (for $1.99), this time from a Target store. *Id.* at ¶ 70. In doing so, Mr. Karter believed "that the products he purchased were of superior quality and that he was supporting U.S. jobs, the U.S. economy, the environment, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients and components." *Id.* at ¶ 81.

31. Because Dude Products' representations were allegedly false, they "harmed" Mr. Karter "because [Dude Products] took [his] money." *Id.* at ¶ 78. In other words, because the products "contain[ed] foreign ingredients, they are not worth the purchase price." *Id.* at ¶ 86.

32. On May 23, 2024, Mr. Ornelas—also in reliance on the "Assembled in USA" claim—purchased (for $9.99) Dude Products' wet wipes from Target's website. *Id.* at ¶¶ 100–02.

According to the Complaint, this "harmed" Mr. Ornelas because the foreign ingredients "diminished the overall value" of the products, which he "would not have purchased . . . at the price paid, or at all, had he known" that the representation was false. *Id.* at ¶¶ 107, 111–12.

33. Based on these allegations, Named Plaintiffs seek to represent the following Class:

> All persons in California who purchased one or more of the Class Products, within four years prior to the filing of this Complaint, that were marketed or represented as being of U.S. origin, without qualification, or any derivative thereof on the product or in its marketing materials, but which contained ingredients or components not grown, sourced or manufactured in the USA.

*Id.* at ¶ 90.

34. Like Named Plaintiff themselves, the Class allegations claim that the members "overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the products they purchased were of U.S. origin and did not contain numerous ingredients and components from outside the United States." *Id.* at ¶¶ 29, 32.

35. That is, Dude Products' representations "caus[ed] financial harm to consumers"— *i.e.,* "the loss of money and/or property." *Id.* at ¶¶ 29, 32, 115 ("suffered harm by paying for the Class Products"), ¶¶ 116, 156 ("suffered monetary harm . . . because they would not have purchased the Class Products on the same terms," and "they paid a premium for the Class Products"), ¶ 117 ("harmed because their money was taken"), ¶ 156 ("lost money or property"), ¶ 159 (Dude Products "has received and continues to receive unearned commercial benefits"), ¶ 160 (Dude Products "enriched by ill-gotten gains from customers, including Plaintiffs, who unwittingly provided money"), ¶ 169 ("concrete injuries . . . because they purchased the Class Products"), ¶ 181 ("did not receive the benefit of their bargain"), ¶ 188 (Dude Products "owes

them money"), ¶ 189 ("resulting in money being extracted"), ¶ 190 ("indebted to [Named] Plaintiffs and members of the Class in a specific sum—the amount of money each paid"), ¶ 195 ("rights were being violated for financial gain"), ¶ 204 ("induced to purchase the Class Products, purchase more of them, pay a higher price, or choose them over competitors' products").

### C. Claims and Relief

36. Along with declarations that Dude Products' conduct was unlawful, the Complaint seeks orders which require Dude Products to:

- "[D]isgorge all monies, revenue, and profits obtained by means of any wrongful act or practice";
- "[C]ompel[] [Dude Products] to pay restitution to [Named] Plaintiffs and all members of the Class, and to restore to [them] all funds acquired";
- Actual and punitive damages; and
- Injunctive relief to "enjoin[] [Dude Products] from continuing" the misrepresentations.

*Id.* at 42–43.

37. To do so, the Complaint asserts the following causes of action:

Count I: California Consumer Legal Remedies Act, Cal. Civ. C. § 1750, *et seq.*

Count II: California Unfair Competition Law, Cal. Bus. & Prof. C. §§ 17200, *et seq.*

Count III: California False Advertising Law, Cal. Bus. & Prof. C. §§ 17500, *et seq.*

Count V[1]: Unjust Enrichment

Count VI: Negligent Misrepresentation

Count VII: Intentional Misrepresentation

*Id.* at 29–42.

### III. The Claim

---

[1] The Complaint skips from Count III to Count V. *See* Exh. C, 38–39.

38. On approximately May 5, 2025, Dude Products tendered to Insurers the defense of the Underlying Lawsuit.

39. On July 2, 2025, Insurers notified Dude Products that it had reviewed the Policies, which do not entitle Dude Products to a defense or indemnity in connection with the Underlying Lawsuit.

40. To date, Dude Product has not withdrawn its tender.

## COUNT I – DECLARATORY JUDGMENT

41. Insurers incorporate and reallege Paragraphs 1–40.

42. The Underlying Lawsuit alleges that Dude Products misrepresented that its products were "Assembled in USA."

43. According to the Complaint, Dude Products "knew or should have known" that those representations were false.

44. In reliance on those alleged misrepresentations, Named Plaintiffs and the Class purchased the products.

45. As a result, Named Plaintiffs and the Class incurred financial "harm" because the products were "not worth the purchase price."

46. Accordingly, the Underlying Lawsuit alleges that Dude Products must "disgorge all monies, revenue, and profits obtained by means of any wrongful act or practice," and "pay restitution to [Named] Plaintiffs and all members of the Class, and to restore to [them] all funds acquired."

47. Because none of those allegations fall within the Policies' definitions of "bodily injury," "property damage," or "personal and advertising injury," Dude Products is not entitled to coverage under the Policies.

48. In addition and in the alternative, even assuming that the Underlying Lawsuit alleged "bodily injury" or "property damage," it would not satisfy the Policies' "occurrence" or "incident" requirements.

49. In addition and in the alternative, even assuming that the Underlying Lawsuit alleged "personal" or "advertising" injuries, the Policies contain at least three exclusions that would nonetheless bar coverage. First, even if the Complaint alleged actual "quality" defects, the "Quality Or Performance Of Goods – Failure To Conform To Statements" Exclusion governs injuries "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement'"—*i.e.*, the "Assembled in USA" claims that (according to the Underlying Lawsuit) denote a certain "quality" standard.

50. Second, the Complaint alleges that Dude Products knew that those "Assembled in USA" claims were false, which falls under the "Material Published With Knowledge Of Falsity" Exclusion.

51. Third, because the Complaint alleges that Dude Products intended those misrepresentations to induce consumers into their purchases, the "Knowing Violation of Rights of Another" Exclusion would further bar coverage.

52. Insurers specifically deny any liability under the Policies, and maintain that Insurers are not obligated to defend or indemnify any judgment entered against Dude Products in the Underlying Lawsuit.

53. Because Dude Products has made such a demand, Insurers are in danger of loss unless the Court construes the Policies and the rights of all parties.

WHEREFORE, Insurers respectfully request that this Court enter judgment as follows:

-13-

(1) Declaring that under the Policies, Insurers owe no duty to defend or indemnify Dude Products in connection with the Underlying Lawsuit; and

(2) Awarding Insurers any such other relief that the Court deems just and proper.

Dated this 18th day of August, 2025.

                                                                      Respectfully Submitted,

                                                                      /s/ Brian J. Talcott
                                                                      Krysta K. Gumbiner
                                                                      Brian J. Talcott
                                                                      Dinsmore & Shohl LLP
                                                                      222 W. Adams Street, Suite 3400
                                                                      Chicago, IL 60606
                                                                      (312) 775-1743
                                                                      (312) 837-4310
                                                                      Krysta.Gumbiner@Dinsmore.com
                                                                      Brian.Talcott@Dinsmore.com

                                                                      ***Counsel for Owners Insurance Company and Auto-Owners Insurance Company***